# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

**ALVIN BENNETT,**

    **Plaintiff,**

v.                                           **Civil Action No. AW-04-1501**

**UNITED STATES OF AMERICA,**

    **Defendant.**

## MEMORANDUM OPINION

This employment discrimination action arises from Plaintiff Alvin Bennett ("Bennett"), a former employee of Charles County Public Schools ("CCPS"), alleging discrimination based on race and retaliation in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et al., and 42 U.S.C. § 1981 ("Section 1981"). Currently before the Court is CCPS's Motion for Partial Dismissal [14]. The Motion has been fully briefed by the parties and is ripe for consideration. No hearing is deemed necessary. See Local Rules 105.6 (D. Md. 2004). For the reasons to follow, CCPS's Motion for Partial Dismissal is granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the non-movant. In 1998, Bennett began his employment with CCPS as a Wastewater Operator. In October of 2000, Bennett filed a Charge of Discrimination with the Maryland Commission on Human Relations ("MCHR") alleging, *inter alia*, that he was denied training. On May 20, 2002, the MCHR denied Bennett's charge finding no probable cause that the CCPS unlawfully discriminated against Bennett. Filing a charge of discrimination is an activity

protected by § 704 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2003-e.

On September 10, 2001, Bennett was notified that his position as a Wastewater Operator would be eliminated, effective June 30, 2002, due to the closing of a wastewater treatment facility where he was employed.[1]  After learning of the apparent elimination of his position, Bennet sought a transfer to another position.  In October of 2002, he accepted a position as a Building Service Worker.  Under the applicable collective bargaining agreement, Bennett's wages were not to be reduced until he had served two years in that position.  The Building Service Worker position was a janitorial position substantially below Bennett's qualifications.

Subsequent to his assignment to the Building Service Worker position, Bennett made numerous transfer requests and expressed his interest in various job vacancies for which he was allegedly qualified. Despite his alleged qualifications for those positions, Bennett was not selected for those vacancies, and other candidates, not of Bennett's race and who had not engaged in protected activities, were selected for those vacancies.

On August 14, 2003, Bennett filed a charge of discrimination through the EEOC, alleging that he was removed and demoted from his Wastewater Operator position on account of his race and in retaliation for having filed his earlier charge of discrimination.  On February 10, 2004, following an investigation, the EEOC notified Bennett that its investigation revealed no discrimination.

On May 11, 2004, Bennett filed a complaint alleging four separate acts of unlawful race discrimination and retaliation: (1) removal from his position as a Wastewater Operator and demotion to

---

[1] On June 6, 2002, Bennet was notified that the termination of his position would be delayed until December 31, 2002.

a Building Service Worker position; (2) denial of his various requests to be transferred from his position as a Building Service Worker; (3) denial of "training opportunities"; and (4) causing his working conditions to become so intolerable that he was compelled to resign (constructive discharge). Relief for each act of discrimination is sought under Title VII and Section 1981 separately.

On December 6, 2004, CCPS filed a Motion for Partial Dismissal of Bennett's claims. CCPS's Motion for Partial Dismissal is now ripe for disposition.

### STANDARD OF REVIEW

Pursuant to Rule 12(b)(1), a party may move to dismiss a claim for relief where the court lacks subject matter jurisdiction over such a claim. A court lacks subject matter jurisdiction over claims where administrative remedies have not been exhausted. See Sloop v. Memorial Mission Hospital, Inc., 198 F.3d 147, 148-49 (4th Cir. 1999) (dismissing retaliation claim under Title VII for failure to exhaust administrative remedies and referring to the exhaustion requirement as a "jurisdictional prerequisite to adjudication in federal courts"); Davis v. North Carolina Dept. of Correction, 48 F.3d 134, 137-38 (4th Cir. 1995) (explaining that requirement that a claimant exhaust administrative procedures is a jurisdictional prerequisite to filing suit under Title VII).

CCPS has presented the Court with several exhibits bolstering their allegation that the Court lacks subject matter jurisdiction over the claims at issue. Pursuant to Rule 12(b)(1), a trial court may consider evidence by affidavit, depositions, or live testimony without converting the proceeding to one for summary judgment. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); see Antares Aircraft v. Federal Republic of Nigeria, 948 F.2d 90 (2nd Cir. 1991), vacated on other grounds, 505 U.S. 1215 (1992) (holding that when ruling on a motion challenging a court's subject matter jurisdiction, pursuant to Rule 12(b)(1) the

court may rely on matters outside the pleadings to resolve jurisdictional fact issues).

Pursuant to Rule 12(b)(6), a court may dismiss all or part of a plaintiff's cause of action for failure to state a claim upon which relief can be granted. If a plaintiff's complaint reveals on its face that the claim alleged therein is barred by an applicable statute of limitations, dismissal of the plaintiff's complaint under Rule 12(b)(6) is appropriate. Frye v. City of Kannapolis, 109 F. Supp. 2d 436, 438 (4th Cir. 1999).

## DISCUSSION

I.  Subject Matter Jurisdiction Over Two of Bennett's Title VII Claims

CCPS argues that this Court lacks subject matter jurisdiction over Bennett's Title VII claims. Specifically, CCPS argues that the Court lacks jurisdiction over (i) Bennett's claim that he was denied transfer out of his Building Service Worker position, or (ii) Bennett's claim that he was constructively discharged.

In order to assert a Title VII claim in federal court, a plaintiff must have exhausted his administrative remedies with respect to the claim. Taylor v. Virginia Union Univ., 193 F.3d 219, 239 (4th Cir. 1999). Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit. Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).[2] The purpose of this exhaustion requirement is "to preserve judicial economy by barring claims that

---

[2]Bennett attempts to distinguish his case from Evans. The Court notes that Bennett references "direct or . . . indirect evidence of discriminatory motive," which is from a section in Evans discussing an employee's burden of proof, a topic entirely unrelated to the exhaustion requirement. Evans, 80 F.3d at 959. Therefore, the Court finds this distinction unpersuasive.

have not been sufficiently investigated following an EEOC complaint." Taylor, 193 F.3d at 239. Thus, in order to satisfy the exhaustion requirement with regard to his two Title VII claims, Bennett must have stated his denial of transfer and constructive discharge claims in his EEOC charge or those claims must be "reasonably related" to the original EEOC complaint.[3]

Bennett clearly does not state a denial of transfer claim in his EEOC charge. Of the four claims raised in Bennett's Title VII complaint, the only one raised in the EEOC charge is Bennett's claim that he was "demoted" from his position as a Wastewater Operator. Bennett did not allege in his EEOC charge that he was ever denied a transfer out of his Building Service Worker position, nor did he even allege that he requested any such transfer. Therefore, the Court cannot find that Bennett stated a claim for denial of transfer in his EEOC charge.

Nevertheless, Bennett's denial of transfer claim is "reasonably related" to his demotion claim. A Title VII complaint and an EEOC charge alleging different discriminatory acts done for the same retaliatory purpose are reasonably related. Smith v. First Union Nat'l Bank, 202 F.3d 234, 248 (4th Cir. 2000); see also Zeuner v. Rare Hospitality Int'l, Inc., 338 F. Supp. 2d 626, 645 (M.D.N.C. 2004) ("Where a plaintiff alleges the same theory of recovery but relies on different supporting facts in the subsequent complaint, the complaint is 'reasonably related' to the EEOC charge.").

First Union is instructive to the case at hand. In First Union, an employee, Smith, alleged in her

---

[3]Bennett also alludes to the third category of the exhaustion requirement — claims developed by reasonable investigation of the original complaint — but gives no arguments positing how a reasonable investigation of the EEOC charge would develop either of the Title VII claims at issue. Therefore, the Court will not discuss the "reasonable investigation" prong of the exhaustion requirement.

5

EEOC charge that her employer, First Union, retaliated against Smith for her sexual harassment complaints by chastising and threatening to terminate her employment. Later, in her Title VII complaint, Smith alleged that First Union retaliated against her on account of those same sexual harassment complaints by forcing her to work in close proximity with her alleged sexual harasser and by not offering her any other positions in First Union. Because both Smith's EEOC charge and Title VII complaint alleged retaliatory actions by First Union's management on account of Smith's prior sexual harassment complaints, the Fourth Circuit found the allegations in Smith's complaint to be reasonably related to her EEOC charge. Id.

In the present case, Bennett engaged in a protected activity by filing a charge of discrimination with the MCHR in October of 2000. Subsequent to engaging in that protected activity, Bennett filed an EEOC alleging that he was demoted "because of [his] race . . . and in retaliation for participating in a protected activity." Bennett also filed a Title VII claim alleging that when his transfer requests were denied, "less qualified candidates, not of [Bennett's] race and who had not engaged in protected activities, were selected for those vacancies." Thus, while Bennett put forth different supporting facts and allegations – that CCPS demoted him from his Wastewater Operator position and also denied his requests to transfer out of his Building Service Worker position – Bennett is alleging that same theories of racial discrimination and retaliation for filing his MCHR charge. Therefore, Bennett's complaint is reasonably related to his EEOC charge. Accordingly, Bennett has sufficiently exhausted his administrative remedies with respect to his denial of transfer claim.

Bennett also fails to state a constructive discharge claim in his EEOC charge. As noted above,

6

Bennett raised only one claim in the EEOC charge, his demotion claim.[4] Thus, Bennet cannot satisfy the exhaustion requirement through its first prong.

Nevertheless, applying the Fourth Circuit's analysis in First Union, *supra*, the Court finds that Bennett's constructive discharge claim and EEOC demotion claim are reasonably related. The Title VII complaint states that "[CCPS] imposed the unreasonable working conditions on [Bennett] because of his race and for his having engaged in protected activities." These are the same theories on which Bennett brought the demotion claim in his EEOC charge: discrimination on account of race and retaliation for filing a previous charge of discrimination. Bennett's constructive discharge claim is therefore reasonably related to the EEOC charge. Accordingly, Bennett has satisfied Title VII's exhaustion requirement for his constructive discharge claim.

II.     Bennett's Denial of Training Claims Are Time-Barred

Under Title VII, an employee who wishes to file a civil action following exhaustion of administrative remedies must do so "[w]ithin 90 days of receipt of notice of final action taken by a department, agency, . . . or by the [EEOC] . . . ." 42 U.S.C. § 2000e-16(c). On May 20, 2002, the MCHR issued its finding of no probable cause that CCPS had denied Bennett training on account of his race. Pursuant to § 2000e-16(c), Bennett had until approximately August 20, 2002 to file suit on his denial of training claim. Bennett, however, did not file suit until May 11, 2004, nearly two years after the MCHR issued its finding of no probable cause. Therefore, Bennett's Title VII denial of training claim is time-barred by the applicable 90-

---

[4]Bennett argues that constructive discharge is "suggested based on the actions of the Charles County Board of Education." The Court cannot accept a vague suggestion when the exhaustion requirement requires claims to be "stated."

day limitations period.

Under Section 1981, the Maryland Code requires that "[a] civil action at law shall be filed within three years from the date it accrues." Md. Code Ann., Cts. & Jud. Proc., § 5-101. Bennett's alleged denial of training opportunities occurred at some time prior to his MCHR charge in October of 2000. According to § 5-101, Bennett had until October of 2003 to file suit on the denial of training claim. As noted above, Bennett did not file suit until May 11, 2004. Therefore, under Maryland's statute of limitation and Section 1981, Bennett's Section 1981 denial of training claim is also time-barred.

Bennett does not contest the applicability of either the Title VII or Section 1981 limitations periods. Instead, Bennett argues that the alleged denial of training opportunities were "continuing discriminatory violations," which would allow for extended limitations periods. This argument is foreclosed by AMTRAK v. Morgan, which held that an employee must file a charge of discrimination within the appropriate limitations period as to each discrete act of discrimination that occurred. 536 U.S. 101, 153 L. Ed. 2d 106, 122 S. Ct. 2061 (2002). In Morgan, the Supreme Court stated that discrete acts of discrimination "are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." Id. at 113. Because denial of training opportunities is a discrete act of discrimination,[5] the continuing violation doctrine does not apply and cannot save Bennett's untimely claims. Therefore, the Court dismisses Bennett's denial of training claim under both Title VII and Section 1981.

## CONCLUSION

---

[5]The Fifth Circuit determined "failure to train" to be a discrete act that is separately actionable. Pegram v. Honeywell, Inc., 361 F.3d 272, 280 (5th Cir. 2004).

For the aforementioned reasons, the Court DENIES CCPS's Motion to Dismiss Bennett's denial of transfer claim and constructive discharge claim, but GRANTS CCPS's Motion to Dismiss Bennett's denial of training opportunities claim under Title VII and Section 1981. An Order consistent with these rulings shall follow.

June 29, 2005 /s/
Date Alexander Williams, Jr.
United States District Judge