**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

**ALVIN BENNETT,**

       **Plaintiff,**

     **v.**

**CHARLES COUNTY PUBLIC SCHOOLS,**

       **Defendant.**

**Civil Action No.  AW-04-1501**

---

## MEMORANDUM OPINION

In this employment discrimination action, Alvin Bennett ("Bennett" or "Plaintiff") brings suit against Charles County Public Schools ("CCPS" or "Defendant"), alleging discrimination based on race, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Currently before the Court is CCPS's Motion for Summary Judgment [37]. The Motion has been fully briefed by the parties and is ripe for consideration. No hearing is deemed necessary. *See* Local Rules 105.6 (D. Md. 2004). For the reasons stated below, the Court will grant CCPS's Motion for Summary Judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the non-movant. In 1998, Bennett, an African-American, began his employment with CCPS as a Wastewater Operator. In October of 2000, Bennett filed a Charge of Discrimination with the Maryland Commission on Human Relations ("MCHR") alleging, *inter alia*, that he was denied training. On May 20, 2002, the MCHR denied Bennett's charge, finding no probable cause that the CCPS unlawfully discriminated against Bennett. Filing a charge of discrimination is an activity protected by § 704 of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2003-e.

On September 10, 2001, Bennett was notified that his position as a Wastewater Operator would be eliminated, effective June 30, 2002, due to the closing of a wastewater treatment facility where he was employed.[1] After learning of the apparent elimination of his position, Bennet sought a transfer to another position. In October of 2002, he accepted a position as a Building Service Worker. Under the applicable collective bargaining agreement, Bennett's wages were not to be reduced until he had served two years in that position. The Building Service Worker position was a janitorial position substantially below Bennett's qualifications.

Subsequent to his assignment to the Building Service Worker position, Bennett made numerous transfer requests and expressed his interest in various job vacancies for which he was allegedly qualified. Despite his alleged qualifications for those positions, Bennett was not selected for those vacancies. Bennett contends that his transfer requests were denied because of his race and because he had engaged in a protected activity.

On August 14, 2003, Bennett filed a charge of discrimination through the EEOC, alleging that he was removed and demoted from his Wastewater Operator position on account of his race and in retaliation for having filed his earlier charge of discrimination. On February 10, 2004, following an investigation, the EEOC notified Bennett that its investigation revealed no discrimination.

On May 11, 2004, Bennett filed a complaint alleging four separate acts of unlawful race discrimination and retaliation: (1) removal from his position as a Wastewater Operator and demotion to a Building Service Worker position; (2) denial of his various requests to be transferred from his

---

[1] On June 6, 2002, Bennet was notified that the termination of his position would be delayed until December 31, 2002.

position as a Building Service Worker; (3) denial of "training opportunities"; and (4) causing his working conditions to become so intolerable that he was compelled to resign (constructive discharge). Relief for each act of discrimination is sought under Title VII and Section 1981 separately.

On December 6, 2004, CCPS filed a Motion for Partial Dismissal of Bennett's claims. By Opinion and Order dated June 29, 2005, the Court granted in part and denied in part CCPS's motion, dismissing Plaintiff's claims for denial of training opportunities. Plaintiff's claims concerning his alleged demotion, denial of transfer requests, and constructive discharge remained. Following the close of discovery, CCPS filed the instant motion for summary judgment, arguing therein that all of its employment actions and decisions were supported by legitimate, nondiscriminatory reasons. CCPS's motion is ripe, and the Court now issues this Opinion.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D. Md. 1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520

(1991) (internal citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## DISCUSSION

When a plaintiff brings a case of discrimination based on circumstantial evidence, courts must apply the three-part proof scheme outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination, whereupon the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the action. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff may then rebut the employer's proffer by proving by a preponderance of the evidence that the employer's legitimate non-discriminatory reason is actually a pretext for discrimination. *Id.* at 804. A plaintiff can prove pretext by showing that the employer's explanation is "unworthy of credence," or by offering other forms of circumstantial evidence sufficiently probative of discrimination. *Id.*

Here, Defendant does not challenge Plaintiff's ability to establish *prima facie* cases of discrimination or retaliation. Instead, Defendant has articulated legitimate, nondiscriminatory reasons for all of the employment actions that Plaintiff complains of, and contends that Plaintiff cannot show that the stated reasons were merely pretextual. The Court agrees, and will grant summary judgment for Defendant.

First, Defendant has shown that Plaintiff's position as Wastewater Operator was eliminated

---

[2] Although Plaintiff asserts claims under both Title VII and Section 1981, the same analysis applies under either statute. *Mallory v. Booth Refrigeration Supply Co., Inc.*, 882 F.2d 908, 910 (4th Cir. 1989).

4

because of a collective decision to phase out the wastewater treatment plants servicing Charles County schools and to replace those plants with more modern facilities. *See* Def.'s Mot., Ex. 1 at 3-4; Ex. 2 at 46-49; Ex. 3 at 8-16. One of the wastewater plants, at Lackey High School, was shut down entirely, while another plant, at Piccowaxen Middle School, was replaced by a new facility. Defendant then determined that its business needs would be better met by hiring an outside contractor to oversee the Piccowaxen plant than by retaining Plaintiff as a full-time wastewater operator. Indeed, the use of an outside contractor to oversee wastewater operations is consistent with Defendant's practice before it hired Plaintiff.

Thus, Defendant has articulated a legitimate, nondiscriminatory reason for eliminating Plaintiff's wastewater operator position. Plaintiff, however, offers no evidence that the asserted reason is merely pretextual. Plaintiff first argues that Defendant has not shown that "there existed a necessity to abolish the wastewater operator position." (Pl.'s Opp. at 3.) While that may be true, Plaintiff has misconstrued Defendant's burden under Title VII. Defendant need not demonstrate that its actions were "wise, fair, or even correct," but simply that they were not motivated by an unlawful purpose. *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998) (explaining that the court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by [employers] charged with employment discrimination") By averring that its wastewater plants were reaching the end of their useful life expectancies, and that it made business sense to eliminate some plants, replace others with modern facilities, and retain an independent contractor to oversee the plants that remained, Defendant has met its burden of stating a legitimate, nondiscriminatory reason for its employment decision.

Plaintiff also contends, without *any* evidentiary support, that "the position of wastewater

operator is still required because the plants that Plaintiff operated are still in operation to date exact as they were when Plaintiff operated them" and that "[t]here was and still remains four schools in Charles County that were not hooked up to public sewers. They are Piccowaxen Middle School, Henry F. Lackey High School, Gale Bailey Elementary School and Mt. Hope Elementary School." (Pl.'s Opp. at 4.) Plaintiff also alleges that the wastewater operator position was not actually eliminated and that Glenn Belmore, a white employee, has assumed Plaintiff's former duties.

Plaintiff's allegations are insufficient to create a genuine dispute of material fact because they are not supported by any "depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," as required by Fed. R. Civ. P. 56. "Unsworn speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). Furthermore, Defendant has refuted Plaintiff's unsubstantiated assertions with sworn testimony establishing: (1) that the Lackey plant was eliminated after that school was hooked up to a sewer line (*see* Def.'s Mot., Ex. 2 at 49.); (2) that the Piccowaxen plant was replaced by new facility (*id.*); (3) that wastewater operations are now performed by an outside contractor, Maryland Environmental Service (*id.* at 52-53); (4) that Glenn Belmore has not assumed Plaintiff's former duties, but rather has "contract oversight" over Maryland Environmental Service (*id.* at 64); and (5) that there are no wastewater plants at Gale Bailey Elementary School or Mt. Hope Elementary School (*id.* at 63). In sum, Plaintiff has failed to produce any competent evidence in support of his allegation that Defendant eliminated his former position because of his race or in retaliation for his protected activities, or that Defendant's proffered reasons for its actions were merely pretextual. As a result, Defendant is entitled to summary judgment on Plaintiff's demotion claim.

With respect to Plaintiff's remaining claims—specifically, his allegation that his transfer

requests were denied for discriminatory or retaliatory reasons, and his contention that he was constructively discharged by being shunted into an unacceptable position—Plaintiff also fails to rebut Defendant's legitimate, nondiscriminatory rationales as pretexts for discrimination. For instance, although Plaintiff did attempt to transfer into a variety of different positions, Defendant has set forth evidence showing that Plaintiff's transfer requests were denied because the positions were given to better qualified individuals. (*See* Def.'s Mot., Ex. 1, Answers to Interrogatories, at 6-8.) In addition, the majority of those selected for these positions were, like Plaintiff, African-American males. (*See id.*) Plaintiff has not come forward with any evidence showing that Defendant denied his transfer requests because of his race or his protected activities, or that Defendant's proffered reasons for selecting others were merely pretextual. Plaintiff's personal belief that the actions taken against him were motivated by race is insufficient to create a genuine issue of material fact. *See Williams v. Cerberonics*, 871 F.2d 452, 456 (4th Cir. 1989).

Plaintiff's claim of constructive discharge also fails as a matter of law. In order to establish constructive discharge, Plaintiff must show that his employer deliberately made his working conditions so intolerable that he was forced to resign. *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). Here, the record shows that after Plaintiff was informed that the wastewater operator position would be eliminated, Plaintiff was permitted to remain in that position for over a year, and then transferred into the only open position for which he was qualified—that of building services worker. Upon his transfer, Plaintiff was guaranteed to receive his old salary for a period of two years. In addition, Defendant accomodated Plaintiff's request to adjust the hours of his shift. Thus, rather than attempting to force Plaintiff to resign, it appears that Defendant was making every effort to retain Plaintiff as an employee. Furthermore, although Plaintiff vaguely alleges that he

found the building services worker position intolerable, Plaintiff could not, in his deposition, cite any incidences of discriminatory or retaliatory treatment in his new position. The only intolerable work conditions that Plaintiff was able to allude to was "just the fact of being a janitor," and the foul language allegedly used by his supervisor. (Pl.'s Dep. at 69.) These allegations do not rise to the level of "intolerability of working conditions" sufficient to state a claim of constructive discharge. *See generally Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004); *see also Blistein v. St. John's College*, 74 F.3d 1459, 1468 (4th Cir. 1996) (intolerability established when reasonable person in employee's position would have had no choice but to resign); *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) ("Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.") Furthermore, while a demotion that "is essentially a career-ending action or a harbinger of dimissal" can constitute a constructive discharge, *see id.*, Plaintiff has not shown that his reassignment to the building services worker position was a "career ending action," a "harbinger of dismissal" or, for that matter, even a "demotion," as it stemmed from the outright elimination of his former position. Consequently, Defendant is entitled to summary judgment on Plaintiff's constructive discharge claim.

## CONCLUSION

For the aforementioned reasons, the Court GRANTS Defendant's Motion for Summary Judgment [37]. An Order consistent with this Opinion shall follow.


<u>May 23, 2006</u>                                                            <u>          /s/          </u>
Date                                                                                    Alexander Williams, Jr.
                                                                                            United States District Judge